HANNAH A. DAVIS v. CAMDEN, GLOUCESTER AND WOOD-
BURY RAILWAY COMPANY.

Submitted June Term, 1905—Decided June 11, 1906.

1. A standing trolley car is an invitation for a passenger to alight,
and he has the right to assume that the car will not be moved,
without signal or notice to him, while he is openly and expedi-
tiously so doing.
2. It is not negligence *per se* to rise from a seat and step to the side
of a slowly-moving open car which is coming to a stop, for the
purpose of getting upon the runboard to alight when the car does
stop.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, PIT-
NEY and REED.

For the rule, *Edward Ambler Armstrong.*

*Contra, Ralph W. E. Donges.*

The opinion of the court was delivered by

FORT, J. The plaintiff was a passenger on a trolley car
of the defendant.

She claims that while upon the runboard of the car, and in
the act of alighting, the car was started by the motorman,
without signal, and without any notice or warning that it was
about to be started.

When the plaintiff rested the evidence of the plaintiff and
her granddaughter, a child of twelve years, established these
facts. Upon the evidence the nonsuit was rightly refused.

The defence was that the car was not stopped, but simply
coming to a stop, at the time the plaintiff stepped upon the
runboard, and that she fell from it before the car actually
stopped.

The motorman and conductor testified that the car stopped within three or four feet after she fell. The conductor says he saw the plaintiff standing at the edge of the car, and he called to her to wait until the car stopped and gave one quick bell to the motorman to stop the car, just as the plaintiff stepped to the runboard and fell.

Mr. Hammond, the man whom the motorman says he was stopping the car to permit to board it, testified that he signaled the car to stop, "and the motorman stopped the car, and just as the car came to a standstill I stepped on." In answer to the question, "Did the lady step off the car before or after you?" he said, "Well, it seems to me, as I observed the whole affair, that we were both stepping about the same time." He was also asked, "Will you please tell me whether or not, as you stepped on the car, it had fully stopped?" His answer was, "The car had come to a stop; had just come to a stop as I stepped up."

Dr. Stratton, a passenger who was called by the defendant, also testified that as Hammond got on it stopped. He further says: "Of course, I did not pay any attention until I heard this little girl." He further said that when she fell "I don't think the car was in motion."

Another witness, a Mrs. Pennington, who says she was standing on her porch close to the place of the accident, was asked, "When she stepped off, Mrs. Pennington, how near was the car stopped?" Her answer was, "Well, it was going slow, but it was moving." She also says: "The car did not go more than its length after plaintiff fell, if it went that far." This witness also testifies that the conductor did not get off the car after the plaintiff fell before the car moved away, and in this her testimony differs from that of every other witness. She says, however, she saw the plaintiff get up and shake the dust off herself, and heard her say there was nothing the matter with her, and then the witness says: "When she [the plaintiff] said there was nothing the matter with her, I shut the door and went into the house."

When the case was closed there was a motion to direct a

verdict for the defendant, which was refused. This we also think was right. Whether the car had stopped and was started while the plaintiff was alighting was clearly, under the proof, for the jury. Conceding that the plaintiff was upon or getting upon the runboard, as the car was slowly coming to a stop, to be ready to alight when it did stop, still this fact, standing alone, is not sufficient to justify a direction for the defendant. It is not negligence *per se* to rise from a seat and step to the side of a slowly-moving open car, which is coming to a stop, for the purpose of getting upon the runboard to alight when the car does stop. *Scott* v. *Bergen County Traction Co.,* 34 *Vroom* 407; *Consolidated Traction Co.* v. *Thalheimer,* 30 *Id.* 474.

When the evidence was all in, it was a question for the jury, under the proof, whether the car had, as the plaintiff contended, come to a full stop while she was getting upon, or after she was upon, the runboard, and was then started up again by the motorman, without signal from the conductor, or without notice or warning to the plaintiff that it was to be started up.

The plaintiff's counsel, in answer to an inquiry from the court, stated that the negligence of the defendant's servant relied upon was that the motorman, after the car had fully stopped, and while the plaintiff was in the act of alighting, had started the car, or permitted it to start, with such speed as to throw her from the runboard. This was the sole question relied upon by the plaintiff, and the only question submitted to the jury by the learned trial justice.

Error is also assigned on the charge of the learned trial justice, which was, in full, as follows:

"GENTLEMEN OF THE JURY—If the motorman brought this car to a stop, and while it was at a stop the plaintiff began to get off the car, and while she was getting off the motorman started up the car again and threw her, then she is entitled to recover a verdict against the company for pain and suffering, and expense and inconvenience occasioned by her accident.

"Now, in determining that question, the single fact for you to settle—the only fact for you to settle—is whether the plaintiff has satisfied you by the greater weight of proof that the motorman had brought the car to a full stop before she started to get off. If she has not succeeded in proving that by the greater weight of proof, then your verdict should be for the defendant; if she has satisfied you that the car was at a full stop, then your verdict should be for the plaintiff. You may retire."

We find no error in this charge. It is negligence for a motorman to stop a car to take on a passenger and then to start it up again without the usual signal from the conductor, or any notice to passengers who may be in the act of alighting at the place where the car thus stops. A standing trolley car is an invitation for a passenger to alight, and a passenger proceeding to do so has the right to assume that the car will not be moved, without signal or notice to him, while he is openly and expeditiously so doing.

That the conductor gave no bell to start the car is admitted, and that the conductor saw the plaintiff in the act of proceeding to alight, he testifies. If, in that state of the proof, the jury find that the plaintiff was thrown from the runboard by the motorman starting the car without any signal or notice, that is negligence entitling the plaintiff to damages for injuries resulting therefrom.

It is also contended that the verdict was against the weight of evidence. I think the clear weight of the evidence is that the car had stopped to take Mr. Hammond on. This being so, then it either started and threw the plaintiff, or it did not. On that there was a conflict in the proof. This was clearly a jury question. The jury have found, under the charge, which very tersely directed their attention to the question of the weight of evidence, that the weight of the evidence was with the plaintiff; and, considering the lack of specificness on the vital question in the case, in the evidence of Dr. Stratton and Mrs. Pennington, and the clearness of the testimony of the plaintiff, her granddaughter and Mr. Hammond, who were the three participants who were fully

conversant with the actual incidents leading up to the accident, we think the verdict cannot be disturbed on the ground that it is against the weight of the evidence.

The rule to show cause is discharged.